FURMAN v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY.

1. **Husband and Wife:** AGENCY BETWEEN: DEGREE OF EVIDENCE TO ESTABLISH. The marital relation alone raises no presumption of agency between husband and wife, but the existence of this relation may aid or impair the significance of other evidence tending to show agency. It is accordingly *held*, in this case, where it was sought to establish the agency of the husband as against the wife in the matter of shipping household goods used and enjoyed by them jointly, that slight evidence of the wife's authority was sufficient.

2. ———: ———: FACTS TENDING TO ESTABLISH. Where a husband had in his possession the defendant's receipt or bill of lading for certain household goods used and enjoyed by himself and wife jointly, and exhibited it to defendant's agents, and on the strength thereof gave directions for the reshipment of the goods, *held* that these facts, unless otherwise explained or accounted for by the husband, were entitled to consideration as tending to prove the husband's authority to act for his wife in the premises.

3. ———: ———: NOTICE TO AGENT BINDS PRINCIPAL. Where the husband, as agent for the wife, attended alone to the shipment of certain household goods owned by the wife, and the goods, after delivery to the defendant for shipment, were seized upon a writ of attachment against the goods of the husband, *held* that notice of the seizure, given by the defendant to the husband, was notice to the wife.

4. ———: ———: PRESUMPTION FROM CONDUCT. Where the husband alone attended to the shipment of household goods belonging to the wife, and the wife was not present, and took no part in the transaction, the defendant, to whom the goods were delivered for shipment, was warranted in considering the husband as the wife's duly authorized agent, unless notified to the contrary.

*Appeal from Muscatine District Court.*

TUESDAY, DECEMBER 11.

THE plaintiff claims of the defendant $2,363.90, the alleged value of certain household goods delivered to the defendant in Chicago for transportation to Atchison, Kansas, which defendant has failed to deliver to plaintiff, the consignee. There was a verdict and judgment for the plaintiff. The defendant appeals. The material facts are stated

in the opinion. The case was before us upon a former appeal. See 57 Iowa, page 42.

*J. Carskaddan,* for appellant.

*Brannan, Jayne & Hoffman,* for appellee.

DAY, CH. J.—I.   The material facts of this case are briefly as follows: About May 1, 1878, the plaintiff and Geo. M. Furman, her husband, who then resided in Chicago, broke up housekeeping, packed and boxed their furniture and household goods, and stored them in a warehouse.   Evidence was introduced tending to show that the goods were purchased with the separate means of the plaintiff, and that they belonged to her.   Intending to remove to Atchison, Kansas, on the eighth day of May, 1878, they had the goods taken from the warehouse to the defendant's depot in Chicago, marked them "Mrs. E. Furman, Atchison, Kansas," and the defendant gave a bill of lading or shipping receipt therefor, stating that the goods were received from Mrs. E. Furman.   The evidence tends to show that the plaintiff's husband attended to the delivery of the goods to the defendant for shipment to Atchison, and that he received the shipping receipt therefor. After the goods were delivered at the depot, and on the same day, they were seized and taken from defendant's custody by a constable, on a writ of attachment issued by a justice of the peace of Chicago, in an attachment suit for $52 rent, in favor of Jacob Stephani and against the plaintiff's husband, and were afterwards, on the eighteenth of June, sold by the constable for $70, under an order of sale issued upon judgment rendered in the attachment proceeding.   Neither the plaintiff nor her husband went to Atchison.   About the fourteenth of May, 1878, the plaintiff left Chicago and went visiting in Missouri.   Plaintiff's husband came from Chicago to Muscatine about May 20, 1878, and engaged in the sewing machine and stationery business.   The plaintiff's

husband wrote to her frequently from Muscatine, and informed her that he had decided to make that his place of business, and, about August 1, 1878, she joined him there. The parties having decided to settle in Muscatine, on the fourth day of June, 1878, the plaintiff's husband called on A. O. Warfield, the station agent of defendant at Muscatine, and presented the shipping receipt given at defendant's Chicago office, and ordered the goods reshipped from Atchison to Muscatine. Warfield telegraphed to Atchison, and was informed by the Atchison agent that the goods had never been received there. Warfield then telegraphed to Chicago, describing plaintiff's shipping receipt, and asking what had become of the goods. He was informed of the attachment seizure, with name of the Chicago justice who issued it, and the location of his office. This intelligence was received June 5, and was communicated to the plaintiff's husband, who thereupon undertook to get the goods released. To this end he sent money to his attorney at Chicago, W. C. Minard, to pay the Stephani claim. Minard received the money from Furman with which to pay off the attachment and release the goods, about June 14, but, learning that Stephani had died on the ninth of June, and that no executor had been appointed, he declined paying the judgment. On the seventeenth of June he took an appeal from the justice to the Cook county circuit court. He failed to serve his supersedeas on the constable, who, in ignorance of the appeal, on the eighteenth of June, sold the goods at public auction under his order of sale. Upon the trial it became a very important question whether the plaintiff, either personally or through her agent, had notice of the seizure of the goods in Chicago in time to prevent their sale under the attachment proceedings. It appears that the plaintiff's husband had notice of the seizure of the goods on the fifth day of June, and that he forwarded money to pay off the claim, which was received by his attorney in Chicago on the fourteenth day of June, four days before the sale of goods. Hence, it became a most

material question whether the plaintiff's husband, as to matters pertaining to the shipping and caring for the goods, was her agent, so that notice to her husband was notice to her. Upon this branch of the case the court, upon request of the plaintiff, instructed the jury as follows: "The husband is not by virtue of the marital relation the agent of the wife in respect of property which belonged to the wife, although such property may consist of household goods, the use of which was enjoyed by both. &ast; &ast; &ast; The facts necessary to show that the husband was authorized to act as agent of the wife must be of the same character and of the same weight as are required to show agency in any other person." It may be conceded that, ordinarily, the rule is as stated by the court. See *McLaran v. Hall*, 26 Iowa, 297; *Miller v. Hollingsworth*, 33 Id., 224. But as to the mere shipment and preservation of household goods, jointly used by the husband and wife, we think something may be implied from the marital relation, and that, in such case, the agency of the husband may be inferred from slighter circumstances than would be necessary to establish an agency upon the part of a stranger. In Abbott upon Trial Evidence, page 167, it is said: "The marital relation alone raises no presumption of agency between them; but its existence may aid or impair the significance of other evidence tending to show agency. Thus, when the agency of the wife is alleged against the husband in matters of a domestic nature, slight evidence of actual authority is enough; while, if his agency is alleged against her to divest her of her estate without consideration, the existence of the relation is a reason for requiring unusually strict proof of authority." In this case the agency of the husband is invoked, not in a transaction divesting the wife of her estate without consideration, but in a transaction allied in principle to the agency of the wife in matters of a domestic nature. We think the same rule applies to the agency of the husband, in the case at bar, as to the agency of the wife in matters of a domestic nature, that

slight evidence of actual authority is sufficient, and that the court erred in instructing the jury that the proof of agency must be of the same character and the same weight as are required to show agency in any other person.

II. The defendant assigns as error the refusal of the court to give the jury the following instruction: "If it appears from the evidence that plaintiff's husband had the defendant's receipt or bill of lading for the goods in controversy, on which plaintiff brings this suit, in his possession at Muscatine, Iowa, on or about June 5, 1878, and exhibited the same to the agent or agents of the defendant at Muscatine, and if such possession of said receipt or bill of lading by plaintiff's husband is not denied, explained or accounted for by plaintiff, and it further appears that plaintiff's husband exhibited said receipt to defendant's agent or agents at Muscatine, and, on the strength thereof, gave directions as to enquiry for and reshipment of said goods, then you are authorized to consider such facts as tending to prove that plaintiff's husband held such receipt or bill of lading with plaintiff's consent, and that he was authorized to receive and receipt for said goods for her." This instruction should have been given. At the very least, the facts enumerated are entitled to consideration, as tending to prove the authority of plaintiff's husband to act for her in the premises.

*2. ——: ——: facts tending to establish.*

III. The defendant also assigns error upon the refusal of the court to give the following instruction: "If it appears that the goods in controversy were marked and designated as household goods, and had been used by plaintiff and her husband in their housekeeping, and were intended to be so used, then you will be authorized to find that plaintiff's husband was her agent in the shipment and control of said goods, from slighter evidence than would be required to establish such agency between strangers, or parties not standing in the relation of husband and wife. And

*SAME AS NO. 1.*

if you find that plaintiff's husband was her agent in respect to the shipment and control of said goods, then notice to him of the attachment of the goods would be notice to her." This instruction is in harmony with the views already expressed, and should have been given.

*3. ——: ——: notice to agent binds principal.*

IV. The defendant complains of the refusal of the court to instruct the jury as follows: "If it appears that plaintiff's husband was present at and superintended or looked after the shipment of the goods in controversy at Chicago, and that plaintiff herself was not present at such shipment, and saw none of the agents or employes of the defendant in relation thereto, then the defendant had the right to consider him (the husband) as plaintiff's duly authorized agent in regard to the shipment and control of said goods, unless notified to the contrary." In our opinion this instruction contains a correct presentation of the law, and it should have been given.

