Joe Goodman, Appellee, v. M. H. Delfs et al., Appellants.

**VENUE:** Office or Agency—Office by Nonresident Landowner. A nonresident landowner may, in the county where his land is situated, so arrange for its *management* and ultimate *sale* that he will be held to "have an office or agency" in the county, within the meaning of Sec. 3500, Code, 1897.

**TENDER:** Check (?) or Cash (?) A contract calling for a *cash* payment is complied with by the tender of a good check for the required amount (1) when no objection is made to the check *because it is a check;* (2) when the parties contemplated that a check would be employed; and (3) when the party to whom the tender is made would not have accepted cash, had it been tendered.

**BROKERS:** Compensation—Unauthorized Verdict. Record reviewed, and *held* that a verdict for a broker's commission was without support, inasmuch as the agent authorizing a sale had no authority beyond renting and managing the property.

*Appeal from Clarke District Court.*—Homer A. Fuller, Judge.

June 23, 1922.

Action at law, to recover a real estate commission in the sum of $1,000 for services alleged by plaintiff to have been performed for the defendants in securing a purchaser for defendants' 400-acre farm. Trial to a jury. At the close of plaintiff's evidence, defendants separately filed motions for a directed verdict in their behalf on several grounds, among them that the evidence did not show that defendants had an agency in Clarke County. These motions were overruled. Plaintiff's motion for a directed verdict was sustained, and judgment entered on such verdict. Defendants appeal.—*Affirmed in part; reversed in part.*

*C. H. E. Boardman,* for appellants.

*O. M. Slaymaker* and *A. M. Miller,* for appellee.

PRESTON, J.—The defendants introduced no evidence, and in argument they concede that there is no conflict in the evidence introduced on the trial after defendants' motion for change of place of trial was overruled. There is no conflict, but there is a question whether plaintiff made a case against Mrs. Delfs. We shall spend no time on the claim of plaintiff that defendant M. H. Delfs employed plaintiff and listed the farm with him for sale, and orally agreed to pay him $1,000 if he found a purchaser who would buy on the terms and conditions made by said defendant; that, on August 4, 1919, plaintiff found a purchaser who was ready, able, and willing to buy the farm at the price and on the terms and conditions proposed; that defendants failed, neglected, and refused to sign the contract or to let the purchaser have the land; and that, therefore, he had earned his commission. A second count of the petition is to the same effect, except that the services performed by him were of the fair and reasonable value of $1,000. Plaintiff testifies that such was the value. There is more or less of a conflict in the evidence presented by affidavits in support of and resistance to the motion to transfer to Tama County. As is often the case, some of the statements in the affidavits are, to a certain extent, in the nature of conclusions. It appears that, when plaintiff had secured a purchaser, Downs, plaintiff prepared a written contract in accordance with the terms proposed by defendant M. H. Delfs, and thereafter read the same over the telephone to said defendant, at Gladbrook, where defendants lived, who stated that the contract as drawn was all right. Both plaintiff and the purchaser talked with said defendant over the phone in regard to the matter. Thereafter, Downs signed the written contract, and it, with the $1,000 check of the purchaser, was sent to defendants at Gladbrook by mail for their signature. The defendants refused to sign, and the contract and check were returned; whereupon plaintiff signed defendants' names to the contract, by himself as agent, and as agent acknowledged the execution of the contract, as did the purchaser; and, as we understand it, the contract was duly recorded. The matters last referred to occurred in August and September, 1919. The petition was filed November 5, 1919. By cross-petition, defendants

sought to bring in Downs, the purchaser, as a party, and asked that the contract be canceled; but this part of the proceeding was dismissed, or otherwise disposed of, and is not now in the case.

There are three propositions in the case: First, as to the alleged error of the court in overruling defendants' motion for a change of place of trial; second, whether there was a performance by plaintiff and the purchaser by tendering a check for $1,000, when the written contract before referred to provides that $1,000 shall be paid in cash, upon the execution of the contract; third, whether, even though the husband had authority from his wife to rent and manage the farm, he could thereunder bind her to a sale of the land.

The first proposition is referred to by defendants as a question of jurisdiction, and is the one most elaborately argued. We have held that, even though an action be brought in the

1. VENUE: office or agency: office by nonresident landowner.

wrong county, the court has jurisdiction, and that defendant's remedy is by motion to transfer to the proper county. The statute so provides. Code Section 3504. Appellees argue the alleged error in the overruling of defendants' motion to transfer, both upon the affidavits presented in support of and in resistance thereto, and upon the evidence introduced in the case. Appellee contends that the question must be determined upon the affidavits accompanying the motion, rather than upon the evidence introduced upon the trial. Appellants say that, since the evidence is not materially different, it is not material which way the evidence bearing on that question is considered. Under the circumstances, we shall consider the evidence as it was before the court at the time the rulings on the motion to transfer were made. The action was brought in Clarke County. Service was had upon defendants on November 14, 1919, in Tama County, where both defendants reside. The 400 acres of land involved are located in Clarke County. Downs, the purchaser, lives at Osceola; and he testifies that, during the negotiations, he told plaintiff he would want the deal closed at Osceola, in Clarke County, and that he wrote that across the bottom of the contract, as it now appears. The written contract, as it now ap-

pears, above the signature of Downs and the signatures of defendants by plaintiff, reads:

"Deal to be closed at Osceola, Iowa, and all papers to be deposited in Osceola National Bank."

It is not clear from the record whether the land was owned by defendant Mary H. or by her and her husband, M. H. .The petition alleges that defendants are husband and wife, and that they own, and have for several years owned, the land in question, the record title of which stands in the name of defendant Mary H.; and that defendants, through defendant M. H. Delfs and his son Julius A., listed the farm with plaintiff for sale, etc. In the defendants' cross-petition, they allege that they own the land described in the petition. This admission was offered in evidence by the plaintiff on the trial of the case. Before answering, defendants filed their joint motion for change of place of trial to Tama County, Iowa, because of their residence therein, and because, as they state, neither of the defendants has ever had any agency in Clarke County for the transaction of any business. The application is supported by the affidavits of both defendants and their son Julius; also the affidavit of defendants' attorney, as to the claim for attorney's fees and expenses. The substance of the affidavit of defendant Mary Delfs is that M. H. is her husband; that she is 50 years of age, and he 70; that both have been residents of Gladbrook, Tama County, for the last 20 years; that neither has resided in Clarke County; that they never had any office or agency in Clarke County for the transaction of business; that her son Julius is not a resident of Clarke County, and never has been, and has never had any agency for the transaction of business in said county; that neither her son nor plaintiff had any authority from her to sell the land or to contract to sell it on the terms and conditions set forth in the petition or in the contract; that, if plaintiff signed her name and the name of her husband to the contract, it was entirely without any authority from her, unauthorized and unwarranted; that she never instructed or authorized her son or her husband or any other person to hire for her any agent, or to employ plaintiff or any other person to sell for her, or to offer to sell her farm and real estate in Clarke County;

that she never knew of any such claim of employment until this suit was begun; that she requested her son at one time to collect some rent, but further than this he had no authority from her to sell the farm or to offer it for sale; that neither her husband nor her son had any authority from her to employ plaintiff to act as agent, either to sell the farm or offer it for sale; that at no time did she directly or indirectly employ plaintiff to sell or offer said farm for sale, or to act as her agent. She does not say in her affidavit that her husband did not have authority to sell the land, except as above, that he had no authority from her to sell for her. The affidavit of the son is that he is 33 years of age; that he is the person referred to in the petition as authorizing the sale of this farm by plaintiff; that at no time did he authorize plaintiff to sell the real estate on the terms and conditions set forth in the petition or in the contract. He says he had no authority from his mother or father to sell the land or to authorize anyone to sell it on such terms, or in any manner to offer it for sale; that he never resided in Clarke County, never had any office or agency for the transaction of business, never had any authority from his parents to employ plaintiff or any other agent to sell the land for them; that he and his parents are residents of Tama County, and that they have no office or agency in Clarke County; that he has read the affidavits of his father and mother; and that they are true, as he verily believes. The affidavit of defendant M. H. is substantially the same; and further, that neither his son nor plaintiff had any authority to sell the land or to contract for it on the terms and conditions in the petition and contract, or any other; that, if plaintiff signed his name and that of his wife to the contract, it was without authority and unwarranted; that he never authorized his son to employ any agent for him or for his wife to sell or offer to sell this land, nor did he or his wife so authorize the son to employ plaintiff.

The plaintiff's resistance to the application is accompanied by affidavits of plaintiff, and of Jesse Bailey, Minnie Bailey, Ira Short, and Downs. Goodman's affidavit shows that he is a resident of Osceola, and has been for five years, all of which time he has been engaged in the real estate business, and has

maintained an office and place of business in said city; that, for four years last past, defendants have owned a large farm in Clarke County; that he is unable to state in which defendant's name the same is of record; that, three or four years ago, defendant M. H. orally employed plaintiff to rent said farm and look after it for him; that, under said agreement, he rented the farm to Jesse Bailey for several years; that, in what defendant M. H. did, he was acting for himself and his codefendant; that for plaintiff's services he was to be paid 10 cents per acre per year for renting, and $1.50 per trip for all trips made to the farm to look after it; that defendants also intrusted to plaintiff the buying of material and supplies for the farm, and various business transactions with the tenant; that defendant M. H. came to Osceola a number of times during the four years, and on practically every occasion consulted and conferred with plaintiff concerning the farm; that he made the office of plaintiff his headquarters; that plaintiff repeatedly took him to see the farm and inspect the same, and he advised with plaintiff about it; that plaintiff otherwise looked after the management and control of the same; that defendants knew and understood that plaintiff had an office and agency and place of business in Osceola, and that it was at such point that the farm was to be rented and largely looked after; that, on several of said occasions, and within the last three or four years, defendant M. H., for himself and his wife, requested plaintiff to find a buyer for the farm, and agreed to pay a commission if he did so; that he said to plaintiff that he (plaintiff) was in business in Osceola, and in a place where he could find buyers, and show the farm, and that he desired plaintiff to look after, list, take care of, sell, and dispose of the farm; that plaintiff accepted said employment, and found Downs as a purchaser, ready, able, and willing to take the farm on the terms proposed, and was only prevented from carrying out the sale by defendants' refusal to do so; that said defendant M. H. was authorized and had authority to do these things for himself and his wife; that this action grows out of and is connected with the business; that, for the last three or four years, and until the commencement of this suit, defend-

ants have had an office and agency in Clarke County; and that this action grows out of and is connected with the same.

The plaintiff says that the statements in the petition are true, and the same is made a part of his affidavit, by reference.

The affidavit of Jesse Bailey, the tenant for several years last past, says that he has rented the farm through and from plaintiff; that he talked with him about the terms and conditions of the rent, and about the materials and supplies needed on the farm; that he talked with the defendant M. H. Delfs, who has told witness that plaintiff was authorized to rent the farm, was his agent, with authority to look after it, and for witness to confer with plaintiff about what was needed on the place; that plaintiff came to the place repeatedly, and on several occasions with defendant M. H. During all of said time, plaintiff had an office and place of business in Osceola, where witness largely did the business with him of the management, looking after, and control of the farm. He knows that, during all of said time, plaintiff showed the farm to prospective buyers. The affidavit of Bailey's wife is substantially to the same effect, but with less detail.

The affidavit of Short, formerly a partner of plaintiff's, is to the effect that he knows that plaintiff looked after, took care of renting, and largely controlled the farm of defendants; that he is acquainted with defendant M. H., who told witness that plaintiff was the agent of himself and wife, to rent said farm and to sell the same, and that Goodman was located at Osceola, where he could easily find buyers, and that said defendant expected plaintiff to manage and sell the farm from said place; that defendant M. H. was at plaintiff's office repeatedly, and witness personally heard him tell plaintiff to sell the farm, and to find a buyer; that he knows of plaintiff's consulting and conferring with the renters on the place, at his office; that plaintiff rented the farm on several different occasions, looked after the management and control of it, made trips to the farm to look after it, and trips to the farm in company with defendant M. H.; that defendant M. H. made his headquarters at plaintiff's office when in town; that he knows of plaintiff's showing the

farm to prospective buyers and to different persons to interest them in buying the same.

The affidavit of Downs is to the effect that he is a resident and citizen of Osceola, and has been for five years; that he is personally acquainted with plaintiff; that, last summer or fall, plaintiff offered and proposed to sell witness the farm in question; that witness accepted the proposition, and agreed to take the same, and a written contract was made and entered into, and the same was signed by him and by plaintiff, as the agent of the defendants; that he personally called defendant M. H. over the phone, and talked with him about it; and that he said the terms and conditions proposed by Goodman were satisfactory, and he would sell thereon, also said that plaintiff was his agent, and had authority to sell the farm, that he had listed it with plaintiff, who had looked after it and taken care of it for some time; that witness transacted the business in regard to the purchase of said farm with plaintiff at Osceola, and largely at his office.

This is the substance of the evidence contained in the affidavits. In addition to the evidence of Downs in the foregoing affidavit, and what has been heretofore set out, he testified, on the trial of the case, in regard to going over the matter of the purchase with defendant M. H. over the phone, and the details of that, and further, he testifies that he told M. H. that possession would be required the first of March, and that said defendant said, "All right;" that said defendant made no objections to any portion of the contract; that witness asked defendant if he was paying a commission, and said he would not buy anything with the commission attached; and that defendant said he was paying a commission, and that the commission was a thousand dollars; that he told defendant over the phone that plaintiff would send the contract out that night, told him that he had already signed the contract, and would send a check for $1,000; and that defendant said that was all right, and that the contract would be signed and returned. This evidence is here set out for its bearing upon the second proposition in the case, as before stated.

1. On the first proposition, appellant cites Code Sections

3500 and 3501. Under the last named section, appellants have the right to have any action brought against them in the county in which they are residents, unless plaintiff has shown that defendants had an office or agency in Clarke County, in reference to the management and sale of the land in question, as provided in Section 3500, which reads:

"When a corporation, company or individual has an office or agency in any county for the transaction of business, any actions growing out of or connected with the business of that office or agency may be brought in the county where such office or agency is located."

Much of the evidence before set out, in the showing by plaintiff, as to his management of the farm and the conversations with defendant M. H. in regard to selling the farm and showing it to prospective buyers, and so on, is denied in the affidavits presented by defendants. Though, as before stated, there is more or less conflict and a statement of conclusions in the affidavits, the trial court, upon such affidavits, has found for plaintiff, and that there was an office and agency of the defendants- in Clarke County, and that the matter in controversy grows out of and is connected with the business of such agency. The question is whether, taking all the facts and circumstances shown by plaintiff's affidavits, though contradicted to some extent by the affidavits on behalf of defendants, such facts are sufficient to sustain the ruling of the trial court, and to show an agency there. We think the showing is sufficient. We held, in *Locke v. Chicago Chronicle Co.*, 107 Iowa 390, 394, that whether defendant had an agency in Polk County, within the meaning of the statute, for the transaction of business, and whether the action grew out of or was connected with the business of that agency, were not questions of law, but of fact, for the determination of the court trying the facts; and that its findings as to them had such support in the evidence that we were not authorized to disturb them. See, also, *Gross v. Nichols*, 72 Iowa 239. In *Gilbert v. McCullough*, 140 Iowa 362, the action was brought in Woodbury County. Defendant resided in Dubuque County, and owned a lot in Sioux City. Defendant had an agency in Sioux City, charged with the renting and caring for

certain real estate of defendant in that city. The plaintiff, a
real estate agent in the same city, was also employed or author-
ized by the defendant to find a buyer for the property at a
stated price, and to report his purchaser, when found, to the
agent first named. It was held that, under the provisions of
Section 3500 of the statute, the case was triable in Woodbury
County, and that the trial court erred in transferring the case.
We said:

"That the plaintiff did have an agency in Sioux City can-
not well be disputed. Although the agent was not authorized
to bind the principal by a sale, he was authorized to receive and
forward bids for the property. The plaintiff was employed or
authorized to assist in the business of that agency by finding a
purchaser and reporting the fact for the consideration of the
defendant. The service so rendered grew out of and was con-
nected with the business of the agency, and the action to re-
cover compensation therefor was properly brought in Wood-
bury County."

See, also, *Milligan v. Davis*, 49 Iowa 126; *Ockerson v. Burn-
ham & Co.*, 63 Iowa 570; *Mitchell v. Lang & Co.* (Iowa), 112
N. W. 87, cited in the *Gilbert* case. In the *Ockerson* case, it was
held that an action for compensation alleged to be due the agent
comes within the statute. There, as here, the plaintiff was the
agent, who himself maintained the office for the defendants in
the county of the plaintiff's residence and agency. The breach
of the contract there was that defendants discharged plaintiff
from their employment without sufficient cause. See, also, *Brad-
shaw v. Des Moines Ins. Co.*, 154 Iowa 101, 109. In the *Mitchell*
case, defendant had an agent in Dallas County, engaged in
promoting the sale of horses, and the plaintiff was employed
to assist the agent in finding purchasers; and it was decided
that the case was properly brought there, although the defend-
ant was a resident of another county. We think the instant
case is as strong as, if indeed not stronger, as to the agency,
than in the *Gilbert* case. Appellee also cites on this point *Lake
v. Western Silo Co.*, 177 Iowa 735, which cites the *Gilbert* case
and other cases where it was held not error to deny a motion
for change of venue. See, also, *Kabrick v. Case T. M. Co.*, 180

Iowa 598, 601. *Locke v. Chicago Chronicle Co.*, 107 Iowa 390, is also cited in the *Gilbert* case, to the point that to come within this provision the office or agency need not be of a permanent character. In that case, Section 2585 of the Code of 1873 was referred to, which is now Section 3500 of the Code of 1897. The more important question in that case was in regard to the service of notice upon an agent of the defendant company, which was engaged in business in Illinois. The matter of service was under Section 2613 of the Code of 1873, now Section 3532, Code of 1897.

While this is true, it was said in the *Locke* case that there must be an office or agency, but no fixed rule is given for ascertaining what constitutes an office or agency. It is said that this must necessarily be determined from the facts in each case. It was also said in that case that there must be an office and agency, and an agent or clerk employed therein, under Section 2613. This was for the purpose of service of notice. The facts to show what constitutes an office or agency would be similar under both sections. As bearing upon this question, see, also, *Murphy v. Albany Pecan Dev. Co.*, 169 Iowa 542. In *New Hampshire F. Ins. Co. v. Utterback*, 184 Iowa 661, 663, it was held that the same rule applied to resident as well as to nonresident insurance companies, in so far as it involves transfer to the proper county. In *State v. District Court*, 191 Iowa 244, it was held that, under the statutes, a domestic corporation of the class there involved might be sued in the county where its principal place of business is fixed by its articles of incorporation, or in a county where it maintains an office or agency, etc.

It is contended by appellants that the agency, if any, of plaintiff had terminated a year before this action was brought. At one point in the cross-examination of plaintiff on the trial on the merits, plaintiff did say that he had nothing to do with the farm after July, 1918, except showing it for sale. At that point, he was being interrogated in regard to a lease. It does appear, without substantial dispute, that, for some time prior and up to August, 1919, plaintiff had advertised the property for sale in different newspapers, was making efforts to sell it, and showing the property, and that in August he found the

purchaser Downs, which culminated in the proceedings involved in this case. There is nothing in the record to show that the agency had been revoked. Appellants' affidavits do not show that the relation had ceased, but are to the effect, rather, that it never existed. Another circumstance, in addition to the foregoing, which may be mentioned, is that, in a letter written by defendant M. H. to plaintiff, dated July 29, 1919, defendant asked plaintiff to "Please find out whether the renter cut the hedge on the east 80," etc. In the same letter, defendant states that he wants to sell, because he can use the money to better advantage, and states the terms.

It is further contended by appellants that plaintiff had no personal dealings with the defendant Mary H. Delfs. Such is the record. The argument in reference to this is that the husband had no authority to sell the property, or to employ plaintiff to do so. As said, the evidence is not very clear as to who had the legal title. The evidence preponderates that the defendants owned it together. Indeed, the only evidence we find in the record on that subject is the evidence offered by plaintiff, by offering the cross-petition filed by defendants, which recites that defendants own it. However this may be, so far as the record shows, the husband for several years had the entire management and control of the property, presumably with the assent of the wife. The marital relation alone raises no presumption of agency between husband and wife, but the existence of the relation is a circumstance, with others, tending to show agency; and it has been held that slight evidence of agency is sufficient. *Furman v. Chicago, R. I. & P. R. Co.*, 62 Iowa 395; *Helwig v. Fogelsong*, 166 Iowa 715, 727; 21 Cyc. 1418 and 1663. We think the evidence is sufficient to show that the husband was the agent of his wife, in so far as the renting and management of the farm were concerned, and that both had an agency in Clarke County.

2. The next proposition advanced by appellants is that the tender of $1,000 by check was not a compliance with the contract requiring cash. Plaintiff's letter inclosing the contract and check is dated August 4, 1919. The Downs check is dated August 4th. Downs testifies that

2. TENDER: check (?) or cash (?)

he had the money in the bank to meet the check. The letter returning the check and unsigned contract is dated August 6, 1919, at Gladbrook, and addressed to plaintiff at Osceola, and signed by Brauch, cashier, and recites:

"We are enclosing herewith the Delfs—Downs contract, together with check sent in your letter of August 4. Mr. Delfs claims he can only sell subject to a lease which you failed to include in this contract. We are writing you at the request of Mr. Delfs."

There is no objection made to the fact that the tender of the $1,000 was by check, rather than cash. The only objection Mr. Delfs made to the contract was that it was not subject to the lease on the land. It appears that, a few days prior thereto, defendant M. H. Delfs wrote plaintiff that, if a buyer wanted possession March 1, 1920, he, defendant, would have to buy the renter off, or make some other arrangements with him. As stated, this matter was discussed in the telephone conversation between said defendant and Downs, and with plaintiff; and it is undisputed that it was then agreed that Downs should send his check. The objection to the contract was on account of matters of which defendants do not now complain. Under such circumstances, we think appellants may not now complain of this matter, and that the check was a good tender. *Shay v. Callanan,* 124 Iowa 370, 374; 38 Cyc. 146, 147. The circumstances indicate that defendants would not have executed the contract or accepted the $1,000, had money, instead of a check, been tendered. *Sherwood v. Greater M. V. Coal Co.,* 193 Iowa 365. The check was made payable to the order of M. F. and Mary H. Delfs. It is now objected that there is a mistake in the initial of the defendant M. H. No such objection was made by either of defendants when the check was returned, or thereafter. It is clearly a mistake. The original notice is addressed to M. F. and Mary Delfs, but served on the proper parties. Some of the letters from plaintiff were addressed to Mr. Delfs as M. F., but they were answered by the defendant M. H.

3.  On the merits, we think the trial court erred in directing a verdict against defendant Mrs. Delfs. It is quite clear from the record that none of the transactions, from the beginning

3. BROKERS: compensation: unauthorized verdict. to the end, were with her, and that she had nothing to do, personally or otherwise, with the transaction in regard to the sale of the property, or with the contract to sell. Conceding that the evidence was sufficient to show that she had authorized her husband to manage the property, it does not show that she ever authorized him or her son or anyone to sell the property, or to enter into a contract to sell it. Authority to rent and manage the property would not be authority to sell it. There is nothing in the record to show that she authorized her husband to delegate such authority to plaintiff, and appellants contend that such a contract cannot be delegated. Appellants cite *Ruthven Bros. v. American Fire Ins. Co.,* 92 Iowa 316, 325, which we think has a bearing on the proposition now under consideration. Appellants also cite *Linn County Abst. Co. v. Beechley,* 124 Iowa 146.

The judgment is affirmed as to the defendant M. H. Delfs, and reversed and remanded as to defendant Mary H.—*Affirmed in part; reversed in part.*

STEVENS, C. J., WEAVER and DE GRAFF, JJ., concur.