ESTATE OF GEORGE F. HURD, PATRICIA KENDALL HURD, EXECUTRIX, JOHN HURD AND WILLIAM B. HURD, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11556.  Promulgated October 15, 1947.

682

*Albert E. James, Esq.*, and *Hugh Satterlee, Esq.*, for the petitioners.
*Ellyne E. Strickland, Esq.*, for the respondent.

684

OPINION.

MURDOCK, *Judge*: The petitioners first contend that the assessment and collection of the deficiency is barred by the statute of limitations requiring that the estate taxes be assessed within three years after the return was filed. Sec. 874 (a). Their argument is that the Commissioner knew, or should have known, that 156 East 82nd Street[1] was not the address of Patricia Kendall Hurd at the time the notice of deficiency was sent to her; consequently, the deficiency notice was not "mailed" to her as required by section 871 (a) (1), and, therefore, the running of the statute of limitations provided in section 874 was never suspended by the mailing of a notice under section 871 (a). Although the address of Patricia Kendall Hurd was shown in the telephone directory as 67 Park Avenue, the petitioners seem to think that the notice should have been sent to 60 Broadway, which the telephone directory listed as the address of the estate of George F. Hurd, and which was also the

---

[1] All addresses are in New York, N. Y.

office of the attorneys for the executors of his estate. One of these attorneys, who signed and swore to the return as the attorney or agent who had prepared it, gave his address on the return as 60 Broadway. Exhibit No. 5 is stamped "Received October 6, 1944, Upper New York Division." It was produced at the trial from the files of the respondent. Except for the acknowledgment, it is as follows:

KNOW ALL MEN BY THESE PRESENTS that ESTATE OF GEORGE F. HURD, by Patricia Kendall Hurd, one of the executors, of 60 Broadway, New York 4, New York, has, and by these presents does, constitute and appoint FRANCIS B. HAMLIN and ALBERT E. JAMES, of 60 Broadway, Borough of Manhattan, City, County and State of New York, its true and lawful attorneys to appear before the Treasury Department, and specifically before the Commissioner of Internal Revenue, in all matters connected with the Federal estate tax return filed in its behalf, giving and granting unto said attorneys full power and authority to appear and act for said estate in its place and stead in all matters arising out of or connected with said Federal estate tax, as fully as it might do itself, with full power of substitution in the premises.

IN WITNESS WHEREOF, the Estate of George F. Hurd has caused these presents to be signed by one of its executors this 19th day of September, 1944.

ESTATE OF GEORGE F. HURD,
By [Signed] PATRICIA KENDALL HURD,
Patricia Kendall Hurd,
*one of the executors.*

Counsel for the petitioners argue that the Commissioner was aware of the correct mailing address of the estate, the entity to which communications should have been addressed, from the date of the filing of that power of attorney, and thereafter recognized that address by mailing communications to the estate to that address.

If the notice of deficiency was inadequate to suspend the running of the statute of limitations, then why would it be adequate to give the Tax Court jurisdiction in this case? Counsel for the petitioners must have had this in mind, for he states in the first paragraph of the petition that it is for a review of the deficiency and also for the dismissal of the petition for lack of jurisdiction, although thereafter in the petition he refers to the statute of limitations rather than to lack of jurisdiction. If the Court had no jurisdiction, it could not pass upon the statute of limitations or any other question except jurisdiction and it would not have authority to hold that there was no deficiency because the statute of limitations had run, but would have to dismiss the proceeding for lack of jurisdiction, without any decision as to the amount of the deficiency. Cf. *Henry M. Day*, 12 B. T. A. 161; *Oscar Block*, 2 T. C. 761. Furthermore, section 875 expressly provides that the running of the statute of limitations provided in section 874 shall be suspended "(and in any event, if a proceeding in respect of the deficiency is placed on the docket of the Board [now the Tax Court], until the decision of the Board becomes final), and for 60

days thereafter." Here, a proceeding in respect of the deficiency has been placed on the docket of the Court, and unless it is dismissed for lack of jurisdiction, the running of the statute would seem to be suspended in any event.

However, it is not necessary to decide either of these suggested questions. One of the obvious purposes for requiring an executor (in this case executrix) to give his address in the return is to have him officially notify the Commissioner of his address, to be used by the Commissioner wherever necessary, as, for example, in mailing a notice of deficiency. The present executrix thus officially notified the Commissioner that her address was 156 East 82nd Street. An executor, having given his address in the return, should thereafter give the Commissioner reasonable notice of any change in that address. The executrix in this case never advised the Commissioner that 156 East 82nd Street was no longer her address or that she desired to be addressed at some other place. The reference to 60 Broadway in the power of attorney (Exhibit 5) is not a notice that 156 East 82nd Street was no longer the residence and proper address of the executrix. It is immaterial that the Commissioner used 60 Broadway in communicating with the attorneys for the estate or with the estate itself prior to the issuance of the notice of deficiency. That was an office building in which the attorneys for the estate had their office, which office also appears to have served as the office of the estate. The Commissioner is required by section 871 (a) (1) "to send notice of such deficiency to the executor by registered mail" if he determines that there is a deficiency in estate tax. The Commissioner, having been officially notified of her address, would subject himself and the revenues to unnecessary risk if he discarded that address and used another selected from a telephone book which might easily be the address of a wholly different person by the same name. Cf. *Commissioner* v. *Rosenheim*, 132 Fed. (2d) 677, reversing 45 B. T. A. 1018. The notice of deficiency was mailed within the meaning of the statute when it was sent by registered mail to the executrix at 156 East 82nd Street. The statutory period for assessment and collection had not expired at that time. Its running was immediately suspended by the mailing of that notice and is still suspended.[2]

---

[2] The notice of deficiency was received by the executors of the estate or their attorneys on the 7th day after it was mailed. They filed a petition with this Court within the time prescribed and there has been no hardship, if that circumstance is of any consequence. Cf. *Kay Manufacturing Co.*, 18 B. T. A. 753 ; affd., 53 Fed. (2d) 1083. It might be fairly inferred from the record that Patricia Kendall Hurd arranged in some way that mail addressed to her at 156 East 82nd Street should be delivered to her at 67 Park Avenue. The evidence indicates that an effort was made to deliver the registered letter to her at 67 Park Avenue. Apparently the reason for the short delay in delivery was due to the fact that she was in Canada at the time and the post office authorities refused to deliver the registered letter to persons claiming to represent her, but were finally persuaded to deliver it to her personal attorney, who then turned it over to the representatives of the estate of the decedent.

The decedent, by means of the separation agreement of January 31, 1934, and various changes in and endorsements of the policies, completely divested himself of all incidents of ownership in the nine policies of insurance on his life. Any doubts as to the completeness of this divestiture which might arise from consideration of the policies and endorsements alone are resolved by the separation agreement and decree. *Zies* v. *New York Life Insurance Co.*, 237 App. Div. 367; 261 N. Y. S. 709; *Locomotive Engineers Mutual Life & Accident Ins. Assn.* v. *Locke*, 295 N. Y. S. 689; affd., 277 N. Y. 584; *Anna Rosenstock*, 41 B. T. A. 635. The parties have stipulated that the transfers of the policies were not made in contemplation of death in the sense that the decedent, when he executed them, had a present apprehension from some existing bodily or mental condition that death was near at hand and no such fear or apprehension was the dominant motive for the assignments. The dominant motive for the assignment of the nine policies to his first wife, in accordance with the separation agreement, was not one connected with death, but was his desire to settle their property rights immediately and to rid himself of all obligations toward her except as specified in the agreement. That was a motive connected with life. Cf. *Cowles* v. *United States*, 152 Fed. (2d) 212. It has been held consistently that under such circumstances the proceeds of the insurance policies can not be included in the gross estate under the provisions of section 811 (c). See *Estate of Louis J. Dorson*, 4 T. C. 463; petition for review dismissed Sept. 6, 1945; *D. W. Blacksher et al., Executors*, 38 B. T. A. 998; *Thomas C. Boswell et al., Executors*, 37 B. T. A. 970; petition for review dismissed Dec. 19, 1938; *David A. Reed et al., Executors*, 24 B. T. A. 166; *Estate of Wilbur B. Ruthrauff*, 9 T. C. 418. Cf. *Chase National Bank* v. *United States*, 278 U. S. 327; *Anna Rosenstock, supra.* Discussion of other arguments advanced by the petitioners in connection with these policies is unnecessary in the light of the above holding.

The parties have also stipulated, in regard to the assignment of the five policies to Patricia Kendall Hurd, that they were not made in contemplation of death in the sense that the decedent, when he executed them, had a present apprehension from some existing bodily or mental condition that death was near at hand and that such fear or apprehension was the dominant motive for the assignment. The question remains as to what was the dominant motive for the assignment, and, unless the petitioner has shown that it was one connected with life rather than with death, the determination of the Commissioner will have to be sustained. *Estate of Arthur D. Cronin*, 7 T. C. 1403; cf. *Estate of Wilbur B. Ruthrauff, supra.*

The petitioners contend that the dominant motive for the assignments was the desire of the decedent to have those five policies freed

immediately from all danger of seizure by his creditors, particularly by his first wife, to whom he owed a large amount of money. They rely for proof of this motive entirely upon the fact that the decedent was indebted to his first wife and upon the rather ambiguous testimony of the widow, in the course of which she said that the policies were transferred to her outright ownership because in that way the amount of the policies would be beyond the reach of any creditors that the decedent might have. A law was enacted in 1927 in the State of New York, where he lived, providing that policies of insurance in which another was named as beneficiary were beyond the reach of creditors of the insured. Insurance Law of New York, sec. 55-a. It is still in effect. That law applied to all policies, regardless of when taken out, except that it did not exempt the policies from claims based on debts in existence at the time of its enactment. *In re Gordon*, 90 Fed. (2d) 583; *Addiss* v. *Selig*, 264 N. Y. 274; 190 N. E. 490; *In re Wark*, 14 Fed. Supp. 915. There is no showing that the decedent had any debts at any time material hereto which antedated the enactment of the law just mentioned, but if he had, his transfers would not have had any effect upon the rights of those debtors, and no absolute transfer to his wife was necessary to free the policies from claims based on debts contracted after 1927. Counsel for the petitioners state that "the decedent was a careful, experienced and able lawyer." The record indicates that he was engaged in the active practice of the law until a short time before his death. We are unable to find on this record that the decedent had as his dominant motive, in making the absolute transfers of the five policies to his wife, a desire to have those policies freed from claims of his creditors. No other motive for the transfers has been suggested. They were of a substantial part of his estate. The determination of the Commissioner that these transfers were within section 811 (c) as transfers made in contemplation of death must be affirmed. This makes unnecessary consideration of the question of whether the transfers were to take effect in possession or enjoyment at or after death.

There was another issue, involving deductions for executors' commissions and attorneys' fees, but the briefs indicate that the parties are no longer in disagreement as to those deductions.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

HILL, *J.*, dissenting: I disagree with the holding of the majority on the question indicated in the second paragraph of the headnote.

TURNER and VAN FOSSAN, *JJ.*; agree with this dissent.