REBECCA S. HAMILTON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JULIAN CHAQUENEAU, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 19829, 21258. Promulgated November 14, 1949.

*Russell B. Livermore, Esq.*, for the petitioner in Docket No. 19829, and *Julian Chaqueneau, pro se*, in Docket No. 21258.

*Robert C. Whitley, Esq.*, for the respondent.

OPINION.

TURNER, *Judge*: These proceedings were heard on motions of the respondent to dismiss for lack of jurisdiction, on the ground that the

petitions were not filed within the period prescribed therefor in section 272 (a) (1) of the Internal Revenue Code.[1]

Petitioner Rebecca S. Hamilton filed her 1944 income tax return with the collector of internal revenue for the third district of New York. The respondent determined a deficiency of $462.36 in income tax against her for 1944, and on March 10, 1948, mailed notice thereof, by registered mail, to her at 415 East 51st Street, New York 22, New York. On August 6, 1948, 149 days after the mailing of the deficiency notice, her petition was filed. In the petition, it is alleged that the petitioner is residing in Paris, France, and that since April 1945 she has resided in England and France. It is her contention that since she was physically outside the States of the Union and the District of Columbia at the time of the mailing of the notice of deficiency, she was entitled, under the provisions of section 272 (a) (1) of the Internal Revenue Code, to a period of 150 days within which to file her petition, and, the petition having been filed within 149 days, it was timely filed. She makes no claim that the New York address to which the deficiency notice was sent was not her address last known to the respondent.

Petitioner Julian Chaqueneau filed his 1941 income tax return, showing his address as Thompson, Ohio, with the collector of internal revenue at Cleveland. In January 1945 a revenue agent examined such of Chaqueneau's records as were available in the office of his accountants, and learned that his then address was 24 East 94th Street, New York, New York. The respondent determined a deficiency of $653.48 in income tax against him for 1941, and on March 7, 1945, sent notice thereof to him, by registered mail, at the New York address stated. On June 7, 1945, 92 days after the notice of deficiency was mailed, Chaqueneau filed his petition herein. In his petition, it is stated that he was out of the United States, and in South America, on business, from about October 15, 1944, to about April 15, 1945. With respect to Chaqueneau, there is no specific claim that the 150-day period is applicable in his case. He states that he was in South Amer-

---

[1] SEC. 272. PROCEDURE IN GENERAL.

    \*        \*        \*        \*        \*        \*

    (a) (1) PETITION TO BOARD OF TAX APPEALS [The Tax Court of the United States].— If in the case of any taxpayer, the Commissioner determines that there is a deficiency in respect of the tax imposed by this chapter, the Commissioner is authorized to send notice of such deficiency to the taxpayer by registered mail. Within ninety days after such notice is mailed (not counting Sunday or a legal holiday in the District of Columbia as the ninetieth day), the taxpayer may file a petition with the Board of Tax Appeals [Tax Court] for a redetermination of the deficiency. No assessment of a deficiency in respect of the tax imposed by this chapter and no distraint or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such ninety-day period, nor, if a petition has been filed with the Board [Tax Court], until the decision of the Board [Tax Court] has become final. \* \* \* If the notice is addressed to a person outside the States of the Union and the District of Columbia, the period specified in this paragraph shall be one hundred and fifty days in lieu of ninety days.

ica on "a rather confidential matter" at the time the deficiency notice was mailed and he does not feel that any penalty should attach, because of such absence, and further, that as far as he "can see" his petition was filed within the 90-day period.

It is the position of the respondent that the deficiency notices were sent to each of these petitioners at their addresses last known to him, and, since such addresses were not outside the States of the Union and the District of Columbia, neither of the petitioners was entitled, under section 272 (a) (1) of the code, to a longer period than 90 days within which to file a petition, and, since in each case the petition was filed after the running of the 90-day period, the proceedings should be dismissed for lack of jurisdiction.

It is to be noted that Congress, through the provisions of section 272 (a) (1), has carefully outlined the steps the Commissioner of Internal Revenue must take in moving to the assessment and collection of deficiencies in income tax and, similarly, has prescribed the steps a taxpayer may take if he desires to litigate such liability through the Tax Court of the United States. First, the Commissioner, upon the determination of a deficiency, is "authorized" to send notice of such deficiency to the taxpayer by registered mail and, while by terms the sending of a notice by registered mail appears to be permissive, the provisions of the section which follow indicate that such procedure is mandatory, if the tax is to be finally determined and collected. *John A. Gebelein, Inc.*, 37 B. T. A. 605. See also *Botany Worsted Mills* v. *United States*, 278 U. S. 282; *Midtown Catering Co.*, 13 T. C. 92; and *William M. Greve*, 37 B. T. A. 450. It is next provided that a taxpayer may, within 90 days after such notice is mailed, file a petition with the Tax Court for a redetermination of the deficiency, and that the Commissioner may not assess or collect the deficiency until the expiration of the 90-day period, and, further, if a petition is filed with the Tax Court within that period, not until the decision of the Court has become final. With respect to "a person outside the States of the Union and the District of Columbia," however, the period within which the taxpayer may file his petition is "one hundred and fifty days in lieu of ninety days."

From the date of the enactment of the Revenue Act of 1924, under which the Tax Court was created as the Board of Tax Appeals, until the enactment of the Revenue Act of 1934, the period within which a petition might be filed was, as to all taxpayers, 60 days from the mailing of the notice of deficiency. Under that provision, it was early settled and established law that the filing of the petition within the period specified by the statute was a prerequisite to the jurisdiction of the Board. *Sam Satovsky*, 1 B. T. A. 22. In enacting the Revenue Act of 1934, Congress substituted 90 days in the place of 60 days

as the period within which a taxpayer might file his petition. The explanation for the proposed change given by the Committee on Ways and Means of the House of Representatives, in its report, was that "Experience has shown that this [60 days] is not sufficient time in case of involved assessments, or in case of taxpayers living a very great distance from Washington." In reporting the bill to the Senate, the Committee on Finance expressed the same views. Thus the statute stood until the Revenue Act of 1942 became law on October 21, 1942. In that act two changes, or additions, were made to the statute fixing the time for filing petitions with the Tax Court. There was added to section 272 (a) (1) the sentence which we are now called upon to interpret and apply, and which reads, "If the notice is addressed to a person outside the States of the Union and the District of Columbia, the period specified in this paragraph shall be one hundred and fifty days in lieu of ninety days." There was also added to the code, section 3804 [2] which was designed to expand, in situations described, the time specified for the performance of certain acts where the ability to do or perform those acts would or might be affected by the war.

The 150-day provision added at the end of section 272 (a) (1) first appeared when the Revenue Bill of 1942 was reported to the Senate by its Committee on Finance, and was explained in the committee report as follows:

Under existing law if a notice of deficiency in income tax is mailed to a taxpayer he has 90 days within which to file his petition with the Board of Tax Appeals. In the case of a taxpayer in remote places, such as Hawaii or Alaska, this time limit may possibly work a hardship because of delays in transporting mail that may occur during the present hostilities. To correct this hardship section 272 (a) (1) of the Code has been amended to increase the period to 150 days if the notice

[2] SEC. 3804. TIME FOR PERFORMING CERTAIN ACTS POSTPONED BY REASON OF WAR.

(a) INDIVIDUALS.—The period of time after December 6, 1941, during which an individual is continuously outside the Americas (if such period is longer than ninety days), and the next ninety days thereafter, shall be disregarded in determining, under the internal revenue laws, in respect of any tax liability (including any interest, penalty, additional amount, or addition to the tax) of such individual—

(1) Whether any of the following acts was performed within the time prescribed therefor:

*　　*　　*　　*　　*　　*

(C) filing a petition with the Board of Tax Appeals [Tax Court of the United States] for redetermination of a deficiency, or for review of a decision rendered by the Board [Tax Court];

*　　*　　*　　*　　*　　*

(c) LIMITATION ON TIME TO BE DISREGARDED.[3]—The period of time disregarded under this section shall not extend beyond whichever of the following dates is the earlier:

(1) the fifteenth day of the third month following the month in which the present war with Germany, Italy, and Japan is terminated, as proclaimed by the President; * * *

*　　*　　*　　*　　*　　*

(e) DEFINITIONS.—For purposes of this section—

(1) AMERICAS.—The term "Americas" means North, Central, and South America (including the West Indies but not Greenland), and the Hawaiian Islands.

[3] Section 13 of Public Law 384, approved August 8, 1947, amended subsection (c) (1), making the date therein December 31, 1947, or, in certain instances not here material, a later date to be fixed by the Commissioner.

is mailed to a person outside the States of the Union and the District of Columbia. This extension applies only to deficiency notices mailed after the date of enactment of the act. [Senate Finance Committee Report No. 1631, Seventy-seventh Congress, second session, p. 154.]

As the result of a conference on the bill, the House receded and accepted the Senate amendment without explanation other than a statement in the conference report of the substance of the sentence added.

With respect to the new section 3804, the committee reports limited their comment to a statement of the proposition that the suspension of the various periods prescribed by statute for the performance of the acts specified was because the performance of those acts was impracticable or impossible on account of war conditions during the period an individual was outside the Americas.

Rather obviously, the sentence added by the 1942 Act, to the effect that if the deficiency notice "is addressed to a person outside the States of the Union and the District of Columbia," the period allowed for filing a petition with the Tax Court should be 150 days in lieu of the 90 days otherwise specified in section 272 (a) (1) of the Internal Revenue Code, is open to two possible interpretations. If it is to be said that the words "outside the States of the Union and the District of Columbia" are to refer to the place at which the taxpayer is properly to be addressed, then it would seem, as the respondent contends, that we have no jurisdiction in these cases, in that there is no question that the deficiency notices not only were addressed to these petitioners at places within the States of the Union, but they were properly so addressed. If, on the other hand, Congress intended the words "outside the States of the Union and the District of Columbia" to refer to the place where the taxpayer physically happened to be at the time the deficiency notice was addressed, even though properly addressed to a place within the States of the Union, then it is apparent that these petitioners were allowed 150 days for the filing of their petitions, and, each of the petitions having been filed within such 150 days, we do have jurisdiction.

In support of his claim that the words referred to have to do with the correct place of address, and not with the place where a taxpayer physically happened to be at the particular moment, the respondent refers to section 272 (k), which provides that a notice of deficiency, "if mailed to the taxpayer at his last known address, shall be sufficient for the purposes of this chapter." While section 272 (k) may be of some assistance in understanding in full the procedure outlined by Congress for the determination and collection of deficiencies in tax, including the right of taxpayers to litigate liability therefor in the Tax Court and the prerequisites to Tax Court jurisdiction over such cases, it does not, in our opinion, provide the answer to the question to be decided here.

Section 272 (k) makes no reference to the period within which a petition may be filed, but bears upon the provisions of section 272 (a) (1)

restricting the right of the Commissioner to assess and collect tax, in that it does provide that a notice of deficiency mailed by the Commissioner to the taxpayer at his last known address shall be sufficient for the purposes thereof. One of those purposes is that the mailing of such a notice starts the running of the period within which the taxpayer must file his petition with the Tax Court, if the Commissioner is to be further barred from assessing and collecting the said deficiency. At that point, it seems to us, the emphasis of section 272 (k) must end. In short, its effect is that, where a notice of deficiency is mailed to a taxpayer at his last known address, it starts the running of the period, whether that period be 90 days or 150 days.

Rather obviously, the enactment of the 150-day provision was precipitated or brought about by the difficulties in transporting mail occasioned by the hostilities then going on. It seems reasonable to conclude that Congress could have been thinking of either one of two groups of people, or both. The successful prosecution of the war required that taxpayers in great numbers leave their homes and go to all parts of the world temporarily or for indefinite periods, and, certainly, as to those taxpayers, a 90-day period for the filing of a petition bottomed on a notice of deficiency mailed to such taxpayers at their last known address would not be adequate in most instances. In addition, Congress could have been thinking of another class of taxpayers who would be seriously handicapped by a period as limited as 90 days, in view of the delays in transporting mail occurring during the hostilities then going on. Taxpayers residing and conducting their businesses in territories and insular possessions of the United States make apt illustrations of taxpayers in that class. Congress could very well have had in mind, also, American citizens living in foreign countries in the conduct of business.

It is our view that Congress had in mind rather definitely this latter class of taxpayers, and not those who were only temporarily removed from their regular places of abode or business through temporary or even indefinite war duty. We think that Congress was legislating with respect to taxpayers regularly residing and carrying on their business and professional activities in places outside the States of the Union and the District of Columbia, and not those who may have been temporarily in such places. Our conclusion as to congressional intent is not rested entirely upon the language of the provision in question, plus the language of the committee reports quoted above, but rather upon the statute as a whole. Congress, at another place in the same act, enacted specific provisions designed to meet the needs of taxpayers temporarily or indefinitely displaced due to their employment in the direct and active conduct of the war. Provision for those taxpayers was specifically made in section 3804, *supra*, of the

code, an entirely new section, enacted as section 507 of the Revenue Act of 1942. In that section Congress provided, generally, that any individual should disregard, as part of the period prescribed for the filing of his petition with the Tax Court, the time during which such an individual was continuously outside the Americas, and that there should also be disregarded an additional 90 days after the return of such individual to the Americas. By subsection (e) (1) thereof, the term "Americas" was defined to mean North, Central, and South America (including the West Indies but not Greenland) and the Hawaiian Islands. The effect of this provision, it is to be noted, was specifically limited to the period beginning with December 7, 1941, the time of the Japanese attack on Pearl Harbor, and ending with the fifteenth day of the third month following the end of the war, as proclaimed by the President. By a later act, the end of the period was fixed as December 31, 1947. As for the last sentence of section 272 (a) (1), the provision here in question, there has been no limitation, and it continues to be a part of the general provisions of the Internal Revenue Code. In the light of these circumstances, it seems to us reasonable to conclude that Congress was there dealing with people outside the States of the Union and the District of Columbia who were so outside the area designated on some settled business and residential basis, and not on a temporary basis, due to their participation in the conduct of the war, or, to put it differently, that the provision relates to individuals residing and carrying on their professional and business activities regularly outside the designated territory, or both. To give the provision such an interpretation, does not carry it as far as counsel for petitioner Hamilton would have us do. It would not construe as applicable the 150-day provision to individuals who merely happen to be, because of a recreational or short business trip, physically outside the States of the Union or the District of Columbia and who by pure fortuitous circumstance happen to be, to illustrate, up in Canada or down in Mexico on the particular dates deficiency notices were addressed to them. By the same token, an interpretation of the provision as meaning something more substantial than the mere fortuitous circumstance of place where a taxpayer physically happened to be on a certain date would likewise protect against hardship a taxpayer regularly residing outside the States of the Union and the District of Columbia, but who, through fortuitous circumstance, physically happened to be in one of the States of the Union on the particular day the deficiency notice was mailed to him, and would, because of his residence outside the States of the Union and the District of Columbia, preserve to him the right to the period of 150 days for the filing of his petition, just as it would for his neighbor who happened to be at home on the day when the deficiency notice was

mailed. Any other interpretation would not, in our opinion, be reasonable.

On the basis of such an interpretation, the conclusion follows that as to Rebecca S. Hamilton, she being a resident of Paris, France, and of England and France since April 1945, the deficiency notice was in her case addressed to a person "outside the States of the Union and the District of Columbia," and, under the statute, she had 150 days from the mailing of the notice to file her petition. Her petition was filed on the 149th day, and this Court has jurisdiction. In considering the disposition of the question, section 272 (k) is of importance only for the purpose of establishing the proposition that, there being no claim that 415 East 51st Street, New York, New York, was not her last known address and the notice having been addressed to her, by registered mail, at that address, the notice was a valid statutory notice of deficiency [4] and started the running of the period within which she must have filed her petition if this Court was to have jurisdiction, and that period, as we have above concluded, was, in her case, 150 days.

As to Julian Chaqueneau, it seems to us that the conclusion must be otherwise. He never became a resident of a country outside the States of the Union and the District of Columbia in so far as appears from the record. Such facts as do appear in the record would tend, rather, to indicate that his absence from the States of the Union and the District of Columbia was of a temporary character. It may, or may not, have been solely in the prosecution of the war, but, so far as appears, his situation is one such as was covered by Congress in section 3804, *supra*, and in enacting section 3804 Congress, for reasons satisfactory and sufficient to itself, saw fit to exclude from the operation of that section individuals who were not outside, but were in, the Americas. The Americas, by specific provision, include South America. Accordingly, the provision prescribed by statute for the filing of the petition by Julian Chaqueneau was 90 days from the date of the mailing of the notice of deficiency, which notice, our facts show, was mailed to his last known address, and being, for that reason, a good and sufficient notice, and his petition having been filed 92 days after the mailing of that notice, this Court is without jurisdiction to consider and determine his case.

Reviewed by the Court.

*Orders will be entered pursuant to the conclusions stated.*

---

MURDOCK, *J.*, dissenting: Congress, in enacting the last sentence of section 272 (a) (1), applicable to notices of deficiency mailed after

[4] *Gennaro A. Carbone*, 8 T. C. 207, and *William M. Greve, supra.* See also *Estate of George F. Hurd,* 9 T. C. 681.

October 21, 1942, must have had in mind either one of two things. One, a notice correctly addressed to a person whose last known address chargeable to the Commissioner was outside the United States, or, two, a notice correctly addressed to a last known address in the United States where the person addressed was outside. The last known addresses of the petitioners in this case were inside the United States, and, if the first alternative is what Congress intended, then neither is entitled to the longer time, whereas, if the second alternative is what Congress intended, then both are entitled to the longer time. So whichever alternative is correct, the prevailing opinion is incorrect.

ARUNDELL and OPPER, *JJ.*, agree with this dissent.

---

BLACK, *J.*, dissenting: In my judgment the last sentence of section 272 (a) (1), which reads: "If the notice is addressed to a person outside the States of the Union and District of Columbia, the period specified in this paragraph shall be one hundred and fifty days in lieu of ninety days," means that if the taxpayer is to receive the 150-day period for filing his petition, the notice of deficiency must be addressed to him at his proper address outside the States of the Union and the District of Columbia. This was not done in either of the cases covered by this report, for the reason that each of the taxpayers had a last known address within the United States to which the Commissioner properly mailed the deficiency notice. Therefore, I disagree with the conclusion of the majority that petitioner Hamilton had 150 days from the date of the mailing of the deficiency notice within which to file her petition with this Court.

I do not dissent from the majority where it holds that petitioner Julian Chaqueneau had only 90 days within which to file his petition and that, because he did not file it within that time, his petition should be dismissed for lack of jurisdiction. With that holding, I agree.

MURDOCK, *J.*, agrees with this dissent.