ERNEST B. HOLT AND LESSIE L. HOLT, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 465–76. Filed February 24, 1977.

---

*Joseph T. Chalhoub,* for the respondent.

OPINION

DAWSON, *Chief Judge:* The pretrial motion in this case was heard by Special Trial Judge Lehman C. Aarons. We agree with his views and conclusions.

The Commissioner filed a motion to dismiss for lack of jurisdiction as to Lessie L. Holt and to change the caption of the case. At issue is whether Lessie L. Holt, who received with her husband a joint notice of deficiency, can invoke the jurisdiction of this Court by ratifying and amending, after the expiration of the 90-day statutory period, an uncaptioned document with an attached copy of the joint notice of deficiency, which was accepted by this Court as a timely imperfect petition signed only by her husband.

Ernest B. Holt and Lessie L. Holt filed joint Federal income tax returns for 1971, 1972, and 1973. On October 17, 1975, a joint statutory notice of deficiency was mailed to them by the Commissioner determining deficiencies for those years in the respective amounts of $1,603, $2,393.72, and $1,068.17, together with additions to tax under section 6653(a), I.R.C. 1954, in the respective amounts of $80.15, $119.69, and $53.41.

On January 15, 1976, this Court received the following handwritten letter in an envelope postmarked January 13, 1976:

1/13/76
U.S. TAX COURT
*400 Second St. N.W.*
*Wash. D.C. 20217*

DEAR SIR:

I would like to file a petition to the U.S. Tax Court, as I do not agree with the findings of I.R.S. Commissioner, Donald C. Alexander. Inclosed is a letter dated Oct. 17, 1975. I am also enclosing 10.00 check for your consideration of this case.

Sincerely Yours,
ERNEST B. HOLT

Rt. One
Asher, Okla. 74826

The joint notice of deficiency was attached to the letter which was filed as a "petition" in the name of Ernest B. Holt, and an "Order for Proper Petition" was sent to him on January 16, 1976. That order required him to file a proper amended petition by March 16, 1976.

On March 17, 1976, the Court received a petition in an envelope postmarked March 15, 1976. The petition was captioned in the names of both Ernest B. and Lessie L. Holt and was signed by both of them. On March 26, 1976, the Court ordered that the latter petition be filed as an amended petition and that the caption of the case be amended to include both names.

After filing an answer to the amended petition, the Commissioner filed a motion to dismiss as to Lessie L. Holt on the grounds that the January 13 letter did not purport to be an appeal on behalf of Lessie L. Holt, and that the amended petition filed 152 days after the statutory notice of deficiency was mailed cannot confer jurisdiction as to her.

In response to such motion to dismiss, the Court received an affidavit which provides in part:

Ernest B. Holt and Lessie L. Holt, being duly sworn upon oath depose and state:

That since Ernest B. Holt and his wife, Lessie L. Holt filed a joint return, Mr. Holt considers that anything filed by him is filed by both; that by Mrs. Holt signing this Memorandum, she indicates that she wants to be embraced therein; that since they wish to represent themselves and have

the matter heard in a more convenient location other than Washington, D.C., they are asking the Court to give them a chance to have the matter heard on substance and merit rather than on form.

Such affidavit was signed by both parties.

In *John L. Brooks*, 63 T.C. 709 (1975), the facts were essentially the same, with one exception. In *Brooks*, the original document which was filed as a petition bore a caption in the joint names of the parties. The *Brooks* opinion discussed and analyzed the applicable portions of the Tax Court Rules of Practice and Procedure, particularly Rule 34(a), Rule 34(b)(7), Rule 41(a), and Rule 60(a). We do not think it necessary here to repeat that analysis. The essence of the *Brooks* opinion is the statement that "in the light of the explanatory Notes to such Rules, we think the 'intent test' should continue to be applied to cases such as this under the new Rules." The "intent" which we seek to ascertain in this particular type of case is whether the nonsigning spouse (typically the wife) intended that the signing spouse (typically the husband) act on her behalf and with her approval when he filed a timely imperfect petition with this Court.

In determining this Court's jurisdiction we think a distinction which turns upon the presence or absence of a caption in an imperfect petition could deservedly be labeled as a "captious distinction." We do not believe that the intent which the *Brooks* opinion directs us to ascertain can, in any realistic sense, be gleaned so mechanically. Certainly, lack of knowledge should not be equated with lack of intent, and Ernest Holt obviously was not sophisticated enough to place a caption on his letter which we accepted and filed as an imperfect petition. That letter was a response, in the best way he knew how to respond, to a notice of deficiency addressed to both spouses. The realistic presumption of intent, based upon the letter and the attached joint notice of deficiency and upon the totality of circumstances herein, is that the petitioner-husband was acting as agent for his wife as well as for himself in filing such imperfect petition in response to the joint notice of deficiency.

Accordingly, in situations where there is a joint notice of deficiency, a timely filed imperfect petition, the Court's "Order for Proper Petition," and the filing of a timely amended petition signed by both spouses, it is our view that

the spouse who did not sign the imperfect petition should be given the opportunity to confirm the correctness of that presumption of intent.[1] In this case the presumed intent was confirmed by filing, within the time specified in our "Order for Proper Petition," the amended petition captioned in the names of both spouses and signed by both. To rule otherwise would be wholly inconsistent with the liberal and salutary policy which we followed in accepting and filing as an imperfect petition the original and inartfully drawn letter which is quoted above. Such a shifting between realism and hypertechnicality cannot be justified in these circumstances.

Since the facts of this case sufficiently establish to our satisfaction that Ernest B. Holt was acting both for himself and Lessie L. Holt in sending the letter which was filed herein as the timely imperfect petition, we will deny the Commissioner's motion to dismiss for lack of jurisdiction as to Lessie L. Holt and to change the caption.

*An appropriate order will be entered.*
Reviewed by the Court.

SCOTT, *J.*, concurring: In order for a petition to be timely as to both a husband and wife, the intent of each to petition for a redetermination of tax must be shown by the timely received document which we file as a petition. Here, the facts show that the notice of deficiency, which was addressed to both the husband and wife, was attached to the letter to the Court which we filed as a timely petition. Although the letter was not captioned, it asked for "your consideration of this case" in the sentence following the statement that the deficiency notice was enclosed. To me this shows an intent gleaned from the "imperfect petition" timely filed, that the "petition" was that of the husband and wife. Therefore, this case is similar to *John L. Brooks*, 63 T.C. 709 (1975). Accordingly, I interpret the majority opinion as holding that had the intent of both husband and wife to be petitioners not been present in the timely filed "petition," we would not have concluded that such

---

[1] With this practical, workable, and fair rule the Commissioner should no longer find it necessary to move against a previously nonsigning spouse, thus avoiding needless administrative burdens and the cluttering of the Court's motions calendar.

intent existed because of an expression of the wife's intent after expiration of the 90-day period allowed by statute for filing a petition.

· TANNENWALD, J., agrees with this concurring opinion.

WILBUR, J., concurring: This is another episode in a series of jurisdictional issues consuming an inordinate amount of the Court's time and resources. This episode, like earlier ones, is in large part our own creation. Until recently this Court has too often adopted quite literal interpretations on jurisdictional questions without fully considering all of the ramifications involved, and the Courts of Appeals have reversed in favor of a less formalistic and practical approach.[1]

Hopefully, this case completes a process of self-correction, rejecting the misconception that words are themselves "objective facts" rather than symbols derived from experience whereby experience is shared.[2]

In order to avoid any misunderstanding about the nature and wisdom of the holding of the majority opinion, it may be helpful to examine the current status of our decisions on the issue we confront. This requires us to consult two "precedents," the first being *John L. Brooks,* 63 T.C. 709 (1975). In *Brooks,* we confronted the same facts as those in the instant case, with one exception: in *Brooks,* the original document which was filed as a petition bore a caption in the joint name of the parties. We therefore held that on the basis of the totality of the circumstances there present "There is clear evidence in this case that Susanna L. Brooks intended that her husband, John L. Brooks, act on her behalf and with

---

[1] See, for example, *Skolski v. Commissioner,* 351 F.2d 485 (3d Cir. 1965), revg. and remanding an unreported order of this Court; *Mindell v. Commissioner,* 200 F.2d 38 (2d Cir. 1952), revg. an unreported order of this Court that relied on *Rebecca S. Hamilton,* 13 T.C. 747, 753 (1949); *Tenzer v. Commissioner,* 285 F.2d 956 (9th Cir. 1960), revg. an unreported order of this Court; *Di Viaio v. Commissioner,* 539 F.2d 231 (D.C. Cir. 1976), revg. an unreported order of this Court. See *Jacob L. Rappaport,* 55 T.C. 709 (1971), affd. per curiam 456 F.2d 1335 (2d Cir. 1972), and *Fred Sylvan,* 65 T.C. 548 (1975), stating that our position in *Rappaport* was erroneous and would no longer be followed.

[2] Indeed, if facts were "objective" we could dispense with most of our judicial machinery, since we would only be confronted with legal issues presented in fully stipulated cases.

her approval in petitioning this Court." *John L. Brooks, supra* at 716.

The second "precedent" is *Frank E. and Yolanda Curry,* docket No. 1073–74S, a memorandum sur order entered July 15, 1974. See discussion in Drennen, "New Tax Court Rules," 27 U. Fla L. Rev. 897, 902, 903 (1975).[3] *Curry* involved facts identical to *Brooks* and those before us, except that, in the document filed as a timely imperfect petition, Mr. Curry, in the words of the memorandum sur order "used the pronouns 'I' and 'my,' and did not use 'we,' 'our,' or 'us,' " and the informal petition did not contain a caption in the name of both spouses. The memorandum sur order went on to conclude that respondent's motion to dismiss must be granted where the " 'nonsigning' taxpayer's name does not appear in the caption of the timely petition filed, or where there are no other indications *in the timely petition* that the nonsigning taxpayer was intended to be embraced therein."[4]

Although there is language in *Brooks* suggesting a broader approach, the key facts in Brooks were thought to be the joint caption, which has been contrasted with the use of the singular pronoun in *Curry* to explain the divergent result the Court reached in those cases. In practice, therefore, we have followed a formalistic approach, the result depending on whether the informal petition employed singular or plural pronouns.

On brief respondent explains the great difficulty of this approach, and explains why the approach taken by the majority herein is the correct one. Respondent states:

Respondent considers the instant case to be significant in terms of administrative importance. Particularly in view of the Court's dichotomous

---

[3] The author discusses *Curry* and *Brooks* together, recognizing that the problem before us cannot be resolved without resort to both. (As does respondent's brief, see discussion, *infra.*) The first few applications of the new Rules of Practice and Procedure, effective Jan. 1, 1974, were incorporated in memoranda sur order. The Court now issues rules decisions of any consequence as opinions (and has for some time), but for some reason, *Curry* has continued to function in a way analogous to precedent. By publishing the opinion in the case herein (which in effect repudiates *Curry*) the Court corrects what was an inadvertent and unforeseen procedural error in the use of *Curry*. Memoranda sur order are not published, and in my view it is erroneous to allow them to function as precedent.

[4] "[T]he singular pronoun was used throughout." Drennen, "New Tax Court Rules," 27 U. Fla. L. Rev. 897, 903 (1975).

position in *Brooks* and *Curry*, respondent is required to spend a substantial amount of time in preparing, filing, and arguing motions to dismiss for lack of jurisdiction as to "non-signing" taxpayer spouses who were the subject of joint statutory notices. This flood of cases clutters the motions calendar of the Court. When a "non-signing" spouse is dismissed additional man-hours are spent by respondent's clerical employees who must make assessments and, as a matter of general policy, must stay collection proceedings pending disposition on the merits of the signing petitioner's case in the Court.

Respondent submits that ratification by amendment with respect to "parties" in the husband-wife situation should be uniformly treated by the Court. If the Court is disposed to overrule *Curry,* the Court should consider the signature of the previously "non-signing" taxpayer on the amended petition to be the mere "correction of technical errors" as it has done so in situations involving other than *Curry* and *Brooks,* such as corporations and trustees in dissolution (e.g. *Fletcher Plastics, Inc., supra* and *Bryant's Esquire Shop, Inc. et al,* Docket No. 4933–75), or the addition of a fiduciary in a decedent spouse situation. Moreover, if the Court overrules *Curry* and treats the signature in the previously described manner, *respondent will no longer find it necessary to move against the previously "non-signing" spouse. There would be no need to consider such a move even if the amended petition continued to use the personal pronoun "I" instead of "we", "my" instead of "our", or the word "petitioner" in the singular instead of the word "petitioners" in the plural as frequently has been the case.* [Respondent's brief, pp. 6, 7, emphasis added.]

By referring to our "dichotomous position" in *Brooks* and *Curry* respondent means that the facts are essentially the same, yet we currently provide opposite results. This Court is to be commended for now eliminating, as respondent suggests, the rigid formalism of our present practice and the severe administrative burdens that go with it.

The Court replaces the present formalism with a more reasonable interpretation of the statute, that my dissenting colleagues with complete accuracy describe as the "heart of the majority's holding." Again, with complete accuracy, my dissenting colleagues repeat and reemphasize the essence of the Court's holding:

in situations where there is a joint notice of deficiency, a timely filed imperfect petition, the Court's "Order for Proper Petition," and the filing of a timely amended petition signed by both spouses, it is our view that the spouse who did not sign the imperfect petition should be given the opportunity to confirm the correctness of that presumption of intent. [*Infra* at 842.]

The issue we confronted in this case was whether we should reaffirm the formalism of the *Brooks-Curry* dichotomy,

applying a kind of jurisdictional parole evidence rule requiring some "objective evidence" within the four corners of the petition itself that the petition was filed on behalf of both spouses; or whether we should allow the nonsigning spouse to confirm an imperfectly manifested but timely intent that, from the totality of circumstances, may be presumed to exist. The Court has clearly and unmistakenly chosen the latter rule.[5] The majority simply holds that there is a presumption in these cases that the signing spouse acted on behalf of the nonsigning spouse that is sufficient to permit the nonsigning spouse to confirm the intent imperfectly manifested in the petition.[6]

The instant case, a run-of-the-mill sample of the many cases we confront in this area, demonstrates the correctness of the majority holding. It is simply unreasonable to conclude, on the record before us, that Mr. Holt acted unilaterally and filed the petition only on behalf of himself. Mr. Holt, a self-employed farmer, earned most, if not all of the income, and Mrs. Holt's liability apparently derives from having signed a joint return. Under these circumstances it was quite understandable that Mr. Holt handled this matter on behalf of both spouses. That this was the intent and that he did in fact act on behalf of himself and his wife (as an agent or an attorney-in-fact) is clear from the following:

(1) The amended petition, including both signatures, is a clear statement by the wife that the husband acted as an "agent or attorney-in-fact";

(2) The parties filed *joint* returns, were sent a *joint* deficiency notice, and enclosed the *joint* notice with the original imperfect petition requesting a redetermination;

---

[5] Nowhere does the majority opinion refer to pronouns or language in the petition that would justify the assertion that this is simply a routine application of the *Brooks-Curry* formalism. In this connection it is clear beyond doubt that the majority does not equate the request in the informal petition to consider "this case" with the caption in *Brooks* or the singular pronouns in *Curry*. The analysis in the majority opinion nowhere mentions the words "this case," thus clearly rejecting tedious semantic dissection in favor of an approach that will simply permit the nonsigning spouse to ratify, as the dissent correctly notes.

[6] It is clear that this presumption is not a rule of law, any more than the doctrine of res ipsa loquitur is a rule of law. See Prosser, Law of Torts, sec. 39, p. 215–32 (3d ed. 1964). We are simply saying that intent may be proved by circumstantial evidence. We simply hold that the circumstances here present, when considered in the light of human experience, make it far more likely that both spouses intended to petition than that only one spouse desired to be heard. We hold that this is an adequate predicate to permit ratification under the circumstances before us.

(3) Mr. Holt apparently handled these business affairs as a matter of practice for both petitioners;

(4) The income on the returns in issue appears to be largely if not wholly from Mr. Holt's self-employment;

(5) The financial fortunes of a married couple rise and fall together—if he wins and she loses, they lose. They petitioned the Court to avoid losing;

(6) We may presume that the Holts did not wish to engage in a multiplicity of litigation in different forums.

Thus, all the inferences from the documents before us indicate that Mrs. Holt intended Mr. Holt to act as an "agent or attorney-in-fact for [his] nonsigning spouse," (see *John L. Brooks,* 63 T.C. 709, 716 (1975)) and Mrs. Holt in signing the amended petition as good as said so.[7] If any doubt remained, in response to the motion to dismiss, the Court received an affidavit from Mr. and Mrs. Holt (set out in the majority opinion) reiterating their intention to file a joint petition.

But no one really doubts that both Mr. and Mrs. Holt intended to petition the Court despite technical defects in their original petition imperfectly manifesting this intent. And no one really asserts that the Holts, in telling us that this was their intent, are lying. The proponents of the existing formalism simply assume it is required by some mysterious (and unstated) policy underlying the 90-day period for appealing to the Tax Court.

But the policy underlying the 90-day appeal period is no mystery. It does not involve important constitutional issues

---

[7] The present mechanical rule has no basis in the law governing one spouse's authority to act as an agent (or attorney-in-fact) on behalf of the other spouse. The Restatement provides:

"Neither husband nor wife by virtue of the relation has power to act as agent for the other. The relation is of such a nature, however, that circumstances which in the case of strangers would not indicate the creation of authority or apparent authority may indicate it in the case of husband or wife. Thus, a husband habitually permitted by his wife to attend to some of her business matters may be found to have authority to transact all her business affairs. * * * [Restatement, Agency 2d, sec. 22(b) (1958).]"

It has also been stated that:

"The marital relation alone raises no presumption of agency between husband and wife, but the existence of the relation is a circumstance, with others, tending to show agency, and it has been held that slight evidence of agency is sufficient. Preston, J., in *Goodman v. Delfs,* 193 Iowa, 1183, 188 N.W. 809, at page 813 (1922); *Mounts v. Boardman Co.,* 79 Okl. 90, 191 Pac. 362 (1920); *Lonnqvist v. Lammi,* 242 Mass. 574, 136 N.E. 610 (1922); *Chadwick v. Wiggin,* 95 Vt. 515, 116 Atl. 74 (1922). This topic is discussed and cases collated in 3 Col. Law Rev. 589, 22 Harv. Law Rev. 56, and 15 Mich. Law Rev. 521. [Tiffany, Agency, sec. 16, p. 45 n. 24 (2d ed. 1924).]"

concerning the division of responsibilities between the States and the Federal Government, such as those that underlie diversity of citizenship or Federal question jurisdiction. It is purely a rule of convenience—no less and no more. Congress simply wanted to suspend assessment and collection for a sufficient period of time to enable the taxpayer to elect a prepayment judicial review of the proposed deficiency. The purpose of Congress was to balance the opportunity for a prepayment hearing with the demands of the tax collection process, and in doing so, Congress ultimately drew the line at 90 days.[8]

The formalism represented by the *Brooks-Curry* dichotomy does not advance this congressional purpose in any respect; indeed, to the extent the balancing process was intended to ensure that tax litigation proceed without disruption of the administrative process, this formalism frustrates the intent of Congress. Mr. Holt is before the Court and all assessment and collection proceedings must now be suspended (indeed may even be enjoined) until the Court determines whether he, in fact, owes the tax. Assuming the computers can be controlled, the collection process will be held in abeyance under the respondent's agreement (albeit at great additional expense and administrative burden), whether or not we permit Mrs. Holt to amend and ratify. When we consider these factors (not to mention the desire of Congress to see the Government administered efficiently, intelligently, and fairly without waste of appropriated funds), can anyone seriously argue that some unstated congressional purpose underlying a rule of convenience mandates all the inconveniences of the present formalism? It clearly does not serve any purpose of Congress.

And we cannot rotely rely on some unstated congressional purpose while ignoring the damage tedious formalisms do to the unmistakably clear purpose of Congress in enacting the small claims procedure. The present rule works a hardship on the small taxpayer. Most of the cases where a document is filed as an imperfect petition, followed by directions to file an amended petition, are from petitioners proceeding under the special small claims procedures enacted by Congress. See sec. 7463. Given the limited amount in controversy, these individ-

---

[8] See H. Rept. No. 704, 73d Cong., 2d Sess. 34 (1934).

uals cannot afford counsel—indeed the inability to afford counsel was the main reason Congress enacted these provisions.

Consequently, these taxpayers will often file an original imperfect petition. To deprive one spouse of a hearing on tediously technical grounds frustrates the intent of Congress to provide the small taxpayer with an informal, inexpensive, expeditious, and accessible hearing.[9] And the average taxpayer will justly regard the result as unfair and wholly impractical.

Apparently, this is one occasion where respondent, in his excellent legal analysis, and now this Court agree with the ordinary citizen's perception, as expressed by the petitioner's affidavit:

That Ernest B. Holt and Lessie L. Holt do not see how it could be much more trouble to the Commissioner of Internal Revenue to have the merits considered as to both Ernest B. Holt and Lessie L. Holt, rather than Ernest B. Holt; that from a practical standpoint, if Ernest B. Holt was successful in the case, it would not avail him anything since his wife, Lessie L. Holt would still be held responsible.

This Court, like the Holts and respondent, is correct in looking at the problem "from a practical standpoint." Like respondent, we too must also devote substantial resources to these cases that could be better spent elsewhere. By adopting the interpretation recommended by the parties, we will, as respondent points out, have very few, if any, of these cases in the future. Respondent will no longer be required to spend a substantial amount of time filing motions to dismiss in these cases; these cases will no longer continue to clutter the motions calendar of the Court; and when one spouse is dismissed, respondent's clerical employees will no longer continue to carry needless administrative burdens. All of this inconvenience is currently incurred at the expense of the general taxpayer, not to mention the inconvenience to other litigants before this Court.[10]

---

[9] We have often said that we "should not adopt an interpretation which curtails [the right to a prepayment hearing] in the absence of a *clear* congressional intent to do so." (Emphasis added.) *Samuel J. King*, 51 T.C. 851, 855 (1969). See also *Irving Fishman, Jr.*, 51 T.C. 869, 874 (1969); affd. per curiam 420 F.2d 491 (2d Cir. 1970); *P. P. Leventis, Jr.*, 49 T.C. 353, 355 (1968).

[10] We cannot ignore this misallocation of the Court's resources when we currently have 19,374 pending cases. Additionally, we cannot ignore respondent's problems in

The present formalistic approach requires a tedious dissection of all elements of the original document filed to glean some faint glimmer of intent, in an attempt to obviate what *Brooks* (63 T.C. at 715) aptly describes as a "harsh result." And once the glimmer of intent is perceived, oral testimony will often be required under the present practice.[11]

Intent cannot be gleaned by isolating a few pronouns from all of the circumstances that give flesh and blood to the verbal skeleton. As Justice Holmes once stated: "A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." *Towne v. Eisner*, 245 U.S. 419, 425 (1918). The existing formalism

---

this particular instance. In a situation like this we urge that respondent withhold *collection* efforts against the dismissed spouse even though *assessment* is made. The special administrative problems this "request" creates for respondent are explained in his brief (*supra* at 835). (We should be aware of them since we now have about 30 other motions pending for decision involving this same issue.) If the computers can be restrained, all may end well under the present practice. Otherwise, the dismissed spouse will be required to pay a deficiency that this Court may subsequently determine is not due and owing. Presumably, since this Court is a kind of moral third-party beneficiary to these agreements, respondent has felt obligated to make a special effort to comply (although under no legal obligation whatsoever to do so) and dismissed spouses have experienced no problem. But a substantial administrative burden was imposed on everyone.

[11] See *Norris E. Carstenson*, 57 T.C. 542 (1972), wherein the petition was filed by an individual who appeared to be a total stranger, and where the petition itself gave no evidence whatsoever that the apparent stranger was in any way authorized to act on behalf of the Carstensons. Mr. Carstenson was permitted, after the 90-day period, to tell us about facts that existed during the 90-day period. Aside from Mr. Carstenson's testimony after the 90-day period elapsed, there was no way to determine that the authorization to act on his behalf was given during the 90-day period. The hearing to clear up the "ambiguities" we confronted was held in Newark, N.J., at which: "petitioner Norris Carstenson appeared pro se. Petitioner Norris Carstenson was duly sworn and testified in response to questions by the [special trial judge] and by respondent's counsel." 57 T.C. at 544.

But for the majority's ruling, a hearing on respondent's motion would of course be required in the instant case, presumably in Tulsa or Oklahoma City where we regularly sit, in order to permit Mrs. Holt to testify. It seems inconceivable that the Court would dismiss the Holts (at least on the record before us) without a hearing simply because they used the wrong pronoun. It is hard to see how they could do so in the face of *Carstenson*. The present case is not the only one we will confront requiring a hearing. What happens, for example, if the envelope (to which we look for a timely postmark) *enclosing* a joint deficiency notice has a return address with the names of *both* spouses, and all the writing on the envelope (including her name) is in the wife's handwriting? Suppose the wife is totally disabled and her husband always acts for her? Suppose the petition includes all the wrong pronouns, but the husband has a separate general power of attorney? And, of course, we cannot possibly foresee all of the problems that life, in its infinite variety, will present.

involves the kind of distinctions laymen refer to as "legalistic," and the term plainly implies no compliment. The majority has given it a fitting burial, at respondent's suggestion, and we may, therefore, safely assume that no efforts will be made to resurrect it.[12]

FAY, IRWIN, and HALL, JJ., agree with this concurring opinion.

STERRETT, J., dissenting: It is an article of faith of this Court that a taxpayer shall be given an opportunity to have his tax liability judicially determined before paying any portion thereof if the statute granting jurisdiction can be reasonably interpreted to permit it. In the instant case the majority has, in my opinion, gone beyond the bounds of statutory reason to reach a desired result.

For convenience we repeat the heart of the majority's holding:

> Accordingly, in situations where there is a joint notice of deficiency, a timely filed imperfect petition, the Court's "Order for Proper Petition," and the filing of a timely amended petition signed by both spouses, it is our view that the spouse who did not sign the imperfect petition should be given the opportunity to confirm the correctness of that presumption of intent.

A footnote labels the above, "a practical, workable, and fair rule."

I respectfully submit that the above is no rule at all. The majority simply includes a recitation of certain facts that always exist when the instant controversy arises, and then announces a conclusion, dignifying it by the label of "rule." Thus, cited as the first factual requirement is that there be a joint notice of deficiency. An "obviousity." The question whether the nonsigning spouse did, or did not, wish to join in

---

[12] Indeed, respondent on brief clearly stated that if we followed his suggestion and rejected *Curry*, that "respondent will no longer find it necessary to move against the previously non-signing spouse," regardless of what pronouns are employed. See *supra* at 835. Additionally, the Internal Revenue Service is a part of the Treasury, whose representatives spend considerable time each year before Congress advancing Treasury proposals in the tax area. Hopefully, since respondent recognizes the harsh results that often stem from tedious interpretations of the present statute, careful attention will be given to resolving any remaining problems in a legislative context, in order to enlarge rather than arbitrarily restrict the opportunity of the average citizen to secure a prepayment hearing.

the imperfect petition only arises in the context of a joint notice of deficiency having been sent.

The second factual requirement is that an imperfect petition be filed. Another assumption which adds nothing. Obviously an imperfect petition was filed since it is a given fact that the Court has ordered a proper petition to be filed.

Third, the Court issues an "Order for Proper Petition," for whatever reason and the nonexecuting spouse seizes the opportunity to execute the amended petition. The fact of executing the amended petition begs the very question at issue; what evidence is there within the statutory period that the nonexecuting spouse wished to be included?

The final factual requirement is that a jointly executed petition be filed within the time limit set by the Court. Presumably this confirms the Court's hope that the filing spouse had been timely speaking for both.

What a bootstrap operation! In my opinion the majority fails to cite a single objective fact in existence during the 90-day period to justify a holding that the filing spouse was speaking for both. Certainly in these days the mere fact of marriage is insufficient, in itself, to create a presumption that one spouse has given the other a permanent blanket power of attorney. Surely something more is required. Here all objective evidence, single caption and signature, for example, points to an intent by the husband to file a petition solely on his own behalf.

The majority attaches considerable significance to the fact that the petitioner was reacting to a joint notice of deficiency and included that notice with his informal petition. But why? After all, the joint notice was the only one the petitioner possessed. Besides, as noted, these cases, by definition, only arise where a joint notice has been sent so how is it helpful to cite a fact that will always exist as an ingredient to a "rule" of law. The fact that the petitioner returned the joint notice adds nothing since, as stated above, that was the only notice he had.

I would go no further than the doctrine laid down in *John L. Brooks*, 63 T.C. 709 (1975). There must be some objective indication within the four corners of the documents timely filed that fairly raises the question as to whether the filing spouse was authorized to speak for the other. Once fairly

raised we should accept a subsequent ratification of the intent.

I respectfully submit that, rather than establishing any rule, the majority has in fact, in any joint notice situation, established an open-end situation where only one spouse need file a timely petition, and the other spouse can have such additional time to determine whether to join in the petition as the Court in its sole discretion decides. No matter how nobly motivated, judicial legislation remains just that.

DRENNEN, QUEALY, and GOFFE, *JJ.*, agree with this dissent.